Nhan T. Vu (State Bar No. 189508)
nvu@willenken.com
WILLENKEN WILSON LOH & DELGADO LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Attorneys for Third-Party Defendant
LiveVox, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MEMPHIS MONTAG, | Case No. 12-CV-0433 R (PLAx) |
| Plaintiff, | |
| v. | **LIVEVOX, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD-PARTY COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| SEQUOIA CONCEPTS, INC., a California corporation dba Sequoia Financial Services, | |
| Defendant. | |
| | [DECLARATION OF NHAN T. VU IN SUPPORT THEREOF AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH] |
| SEQUOIA CONCEPTS, INC., a California corporation dba Sequoia Financial Services, | |
| Third-Party Plaintiff, | Hearing |
| v. | Judge: Hon. Manuel L. Real |
| LIVEVOX, INC., a Delaware corporation; DOES 1 to 10. | Date: October 1, 2012 |
| | Time: 10:00 a.m. |
| Third-Party Defendants. | Courtroom: 8 |

TO THIS HONORABLE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 1, 2012, at 10:00 a.m. in Courtroom 8 of the United States District Court for the Central District of California, Western Division, located at 312 N. Spring Street, Los Angeles, CA 90012, Third-Party Defendant LiveVox, Inc. shall bring a motion to dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) ("Motion") requesting this Court to dismiss with prejudice:

1. The first claim for relief in the Third-Party Complaint for Indemnity;
2. The second claim for relief in the Third-Party Complaint for Contribution & Apportionment;
3. The third claim for relief in the Third-Party Complaint for Negligence;
4. The fourth claim for relief in the Third-Party Complaint for Negligent Misrepresentations; and
5. The fifth claim for relief in the Third-Party Complaint for Breach of Contract.

The basis for this Motion is that none of the above causes of action states a claim upon which relief may be granted.  Each and every one of them fails as a matter of law.  In addition, the Negligence, Negligent Misrepresentations, and Breach of Contract claims contain no supporting factual allegations whatsoever.

The Motion is supported by the attached Memorandum of Points and Authorities, the Declaration of Nhan T. Vu and exhibits attached thereto filed concurrently herewith, the pleadings and other documents filed in this action, such matters of which this Court may take judicial notice, and upon such other evidence and oral argument as may be considered by this Court before or at the hearing on this Motion.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3 which took place on August 3, 2012.

1

1

Dated:  August 8, 2012

WILLENKEN WILSON LOH &
DELGADO LLP

2

3

4

By:   /s/  Nhan T. Vu
Nhan T. Vu

5

6

Attorneys for Third-Party Defendant
LiveVox, Inc.

7

Of Counsel:

8

COHEN & GRESSER LLP

9

Nathaniel P.T. Read (*pro hac vice* pending)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Third-Party Defendant LiveVox, Inc. ("LiveVox") respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss the Third-Party Complaint (the "Third-Party Complaint") filed by Third-Party Plaintiff Sequoia Concepts, Inc. d/b/a Sequoia Financial Services ("Sequoia").

## PRELIMINARY STATEMENT

Plaintiffs Memphis Montag and Daniel Montag ("Plaintiffs") sued Sequoia (a debt collector) for violations of the federal Fair Debt Collection Practices Act (the "FDCPA") and California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act") arising from Sequoia's alleged failure, during telephone calls made to the Plaintiffs, to disclose Sequoia's identity and the fact that the calls were from a debt collector.  Sequoia filed the Third-Party Complaint in a misguided effort to shift some or all of its potential liability to LiveVox, a provider of hosted contact center services to Sequoia.

Sequoia asserts five claims against LiveVox: indemnity, contribution and apportionment, negligence, negligent misrepresentations, and breach of contract. Each of Sequoia's claims fails as a matter of law for the reasons set forth below.

*First*, Sequoia's claims for indemnity and contribution and apportionment have no foundation in law.  Sequoia cannot claim express contractual indemnity, because its written contract with LiveVox provides for LiveVox to indemnify Sequoia only for claims that the use of LiveVox's service infringes another party's intellectual property rights.  The contract thus does not grant Sequoia a right to express indemnity.  Similarly, Sequoia's claims for implied indemnity and contribution and apportionment are barred because neither the FDCPA nor Rosenthal Act grants rights to equitable indemnity or contribution and apportionment.

*Second*, Sequoia's claims for negligence, negligent misrepresentations, and breach of contract are legally insufficient because Sequoia has failed to provide any

1

126479.1

1  factual basis whatsoever for them.  Each of Sequoia's negligence, negligent

2  misrepresentations, and breach of contract claims depend on conclusory statements,

3  without any factual support whatsoever.  In addition, Sequoia's negligence claim

4  merely restates its breach of contract claim and thus violates the economic loss rule.

5  Its negligent misrepresentations claim fails to identify any statement by LiveVox

6  and does not meet the requirements of Fed. R. Civ. P. 9(b) that such claims be pled

7  with particularity.  Finally, in both its negligent misrepresentations and breach of

8  contract claims, Sequoia seeks to hold LiveVox responsible for Sequoia's

9  compliance with the FDCPA and Rosenthal Act.  In fact, however, the contract

10 between Sequoia and LiveVox expressly provides that *Sequoia* is responsible for

11 complying with all local, state, and federal laws when it used LiveVox's services.

12 In short, each of these claims simply fails to identify any legally cognizable basis for

13 finding liability against LiveVox.

14      For all these reasons, Sequoia's claims should be dismissed in their entirety

15 and with prejudice.[1]

16      **STATEMENT OF FACTS**

17      Plaintiffs allege that Sequoia called them "a number" of times between

18 September 2009 and February 2012, leaving messages stating, "in pertinent part,"

19 that the call was an important call for either Ms. Montag or Mr. Montag and leaving

20 a call-back number and a reference number.  First Am.  Class Action Compl. for

21 Damages ("Compl.") ¶¶ 10-13 (Exh. A).[2]  Plaintiffs allege that Sequoia did not state

22

23 [1] LiveVox recognizes that Sequoia may seek to amend its claims in an effort to cure its pleading deficiencies.  LiveVox respectfully submits that any such amendment would be futile, as

24 Sequoia's claims have no basis in law or fact.  *See Gardner v. Martino*, 563 F.3d 981, 990-91 (9th Cir. 2009) (affirming dismissal and denial of leave to amend where proposed amendment would

25 be futile); *Tanasescu v. State Bar of California*, 2012 WL 1401294, at *26 (C.D. Cal. March 26, 2012) (dismissing action without leave to amend where the "fatal flaws" in plaintiff's claims could

26 not be cured).

27 [2] Citations in this form are to exhibits to the Declaration of Nhan T. Vu dated August 8, 2012 filed concurrently herewith.

28

2

126479.1

1  that it was making the call or that the call was from a debt collector, and that the

2  telephone number left on the message belonged to Sequoia. *Id.* Based on these

3  allegations, Plaintiffs assert claims under the FDCPA and Rosenthal Act.

4      Sequoia signed a Master Subscription Agreement with LiveVox (the "MSA")

5  effective February 1, 2009, pursuant to which LiveVox granted Sequoia a non-

6  exclusive license to use LiveVox's Application Service. MSA §§ 1, 2.1 (Exh. B).

7  LiveVox's Application Service is "hosted, Web-based inbound and/or outbound

8  contact software," pursuant to which Sequoia had the ability to make telephone calls

9  and potentially leave messages as part of its debt collection efforts. MSA § 1

10  (definition of Application Service); *see also* Third-Party Compl. ¶ 2 (Exh. C)

11  (alleging that LiveVox provided "recorded calling services in regard to debt

12  collection" pursuant to a written contract with Sequoia). The MSA is governed by

13  California law. MSA § 11.8.

14      Section 3.2 of the MSA lists Sequoia's responsibilities under the agreement,

15  and specifically provides that Sequoia is solely responsible for "all activities"

16  performed by Sequoia's authorized users when they use the Application Service.

17  MSA § 3.2 (Exh. B). Section 3.2 further requires Sequoia to "comply with all

18  applicable local, state, federal, and foreign laws in using the Application Service."

19  *Id.* In addition to agreeing that legal compliance for its usage of the Application

20  Service was its *sole* responsibility, Sequoia also acknowledged that LiveVox was

21  making no representation or warranty other than those contained in the MSA. MSA

22  § 7.3.

23      The MSA grants Sequoia limited indemnification rights that do not extend to

24  claims alleging violations of the FDCPA or Rosenthal Act. Under the MSA,

25  Sequoia is entitled to indemnification from LiveVox only in connection with

26  "claims, demands, suits, or proceedings" brought against Sequoia "alleging that the

27  use of the Application Service as contemplated hereunder infringes the intellectual

28  property rights of a third party." MSA § 8.1 (Exh. B).

1    Sequoia alleges that LiveVox "made the telephone calls" at issue in Plaintiffs'

2    Complaint.  Third-Party Compl. ¶ 2 (Exh. C).  In support of its indemnity and

3    "contribution and apportionment" claims, Sequoia states only the conclusions that it

4    "is entitled to seek express and or implied at law indemnity" and that LiveVox

5    "should be required to contribute or share in payment" for the damages asserted in

6    the Complaint "in proportion to [LiveVox's] separate comparative negligence."

7    Third-Party Compl. ¶¶ 9, 12.

8         Sequoia's negligence claim asserts only that LiveVox "breached a duty of

9    care owed to Sequoia by negligently scripting, recording, scheduling and making

10   recorded voice dialer calls to Plaintiff or Plaintiffs."  Third-Party Complaint ¶ 14

11   (Exh. C).  In support of its negligent misrepresentations claim, Sequoia argues that

12   LiveVox employees made "oral representations" and that LiveVox's "written

13   promotional materials, website written materials, and written contract with Sequoia"

14   state that LiveVox's services would comply "with all California and Federal

15   compliance requirements, which misrepresentations Sequoia relied upon to its

16   detriment in engaging LiveVox to act."  Third-Party Compl. ¶ 17.  These

17   representations were purportedly false and "made negligently" because LiveVox

18   knew or should have known that they were false.  Third-Party Compl. ¶ 18.

19        Sequoia alleges that LiveVox breached the MSA because LiveVox allegedly

20   "was required by the contract to comply with all California and Federal compliance

21   requirements," but "upon information and belief," LiveVox purportedly made "non

22   compliant [*sic*] calls."  Third-Party Compl. ¶ 21.

23   **I.    SEQUOIA'S CLAIMS FOR INDEMNIFICATION AND**

24          **CONTRIBUTION FAIL AS A MATTER OF LAW.**

25          **A.    The MSA Bars Sequoia's Claim For Express Indemnity.**

26        The MSA is the only potential source for Sequoia's claim for express

27   contractual indemnity.  California has long held, however, that where a written

28   contract between the parties includes a duty to indemnify, "the extent of that duty

4

126479.1

1   must be determined from the contract and not from the independent doctrine of

2   equitable indemnity." *Markley v. Beagle*, 66 Cal. 2d 951, 961 (1967).  The MSA

3   grants Sequoia a right to indemnity *only* for claims asserting that the Application

4   Service violates a third-party's intellectual property rights.  MSA § 8.1 (Exh. B).[3]

5   The Complaint here of course asserts no such claims.  Accordingly, Sequoia has no

6   right to express indemnity under the written contract with LiveVox and as a result

7   its claim must be dismissed.

8        **B.    No Claim for Equitable Indemnity Or Contribution Exists For The**

9             **FDCPA Or Rosenthal Act Claims.**

10       Sequoia's claims for implied indemnity (also known as equitable indemnity)

11   and contribution and apportionment are also barred as a matter of law.  Federal

12   courts in this state have repeatedly held that the FDCPA and Rosenthal Act do not

13   create rights of equitable indemnity or contribution and apportionment because

14   those statutes do not expressly provide for such rights.  *See Perez v. Gordon &*

15   *Wong Law Group, P.C.*, 2012 WL 1029425, at *11 (N.D. Cal. March 26, 2012)

16   (dismissing affirmative defenses of apportionment and equitable indemnity because

17   those defenses "have no relation to the FDCPA or [Rosenthal Act] claims asserted

18   in Plaintiff's Complaint"); *see also Nelson v. Equifax Info. Servs., LLC*, 522 F.

19   Supp. 2d 1222, 1239 (C.D. Cal. 2007) (FDCPA does not create "an implied or

20   express right of contribution, indemnification, or equitable credit").

21       As a result, a third-party complaint for contribution and indemnity asserted by

22   a debt collector in connection with liability arising from a violation of the FDCPA

23
24  [3] The Court may consider the MSA when ruling on this motion to dismiss because the MSA was
    incorporated by reference in the Third-Party Complaint (although not actually attached thereto).
    The Third-Party Complaint incorporated the MSA be reference because the Third-Party Complaint
25  "necessarily relies" on and "refers to" the MSA, the MSA "is central to" Sequoia's claims, and the
    MSA is signed by LiveVox and Sequoia, meaning no party can question its authenticity.  *U.S. v.*
26  *Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *Taylor v. Pinnacle Credit Servs., LLC*,
    2011 WL 1303430, at *5 (N.D. Cal. April 4, 2011) (considering letter on Fed. R. Civ. P. 12(b)(6)
27  motion where letter was "incorporated by reference" into FDCPA complaint).
28

and the Rosenthal Act should be dismissed. *See Perez*, 2012 WL 1029425, at *11 (dismissing affirmative defenses of apportionment and equitable indemnity where complaint asserted claims under the FDCPA and Rosenthal Act); *see also Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1058-60 (N.D. Cal. 2000) (denying motion to serve third-party complaint asserting contribution and apportionment claims; plaintiff's claims arose under the FDCPA and California Unfair Business Practices Act).

Here, Sequoia has no legal right to assert equitable indemnity, apportionment, or contribution claims against LiveVox stemming from the FDCPA and Rosenthal Act claims asserted in the Complaint. Accordingly, Sequoia's first two claims in the Third-Party Complaint must be dismissed with prejudice.

## II.   SEQUOIA'S CLAIMS FOR NEGLIGENCE, NEGLIGENT MISREPRESENTATIONS, AND BREACH OF CONTRACT ARE LEGALLY INSUFFICIENT.

Sequoia asserts, in completely conclusory fashion, three additional claims against LiveVox, each of which is legally insufficient. In the oft-cited case of *Ashcroft v. Iqbal*, the Supreme Court recently made clear that, to state a valid cause of action, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Cooper v. Twentieth Century Fox Home Entm't, LLC*, 2012 WL 1021140, at *1 (C.D. Cal. March 16, 2012) (Real, J.) (complaint alleging only "labels and conclusions or a formulaic recitation of elements of the cause of action will not survive dismissal").

Each of Sequoia's claims for negligence, negligent misrepresentations, and breach of contract fails to allege any facts showing a plausible basis for imposing liability on LiveVox and is unsupported by law. Accordingly, each of those claims must be dismissed with prejudice.

6

126479.1

**A.    Sequoia's Negligence Claim Asserts Only A Single, Conclusory Allegation.**

In support of its claim for negligence, Sequoia asserts only that it has "discovered that LiveVox breached a duty of care owed to Sequoia by negligently scripting, recording, scheduling and making recorded voice dialer calls to Plaintiff or Plaintiffs." Third-Party Compl. ¶ 14 (Exh. C). This conclusion is bereft of any factual support and it fails to provide any notice of what particular duty LiveVox purportedly owed to Sequoia and how that duty was allegedly breached.

In addition, Sequoia's negligence claim is nothing but a reframing of its breach of contract claim, which violates the economic loss rule. *See United Guar. Mortgage Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009) ("The economic loss rule generally bars tort claims for contract breaches, thereby limiting contracting parties to contract damages."). The rule is "particularly strong when a party alleges 'commercial activities that negligently or inadvertently [went] awry.'" *Id.* In this case, Sequoia only complains of commercial activity that arose out of the MSA, and therefore, Sequoia is barred from alleging negligence.

As a result, Sequoia's negligence claim should be dismissed.

**B.    Sequoia's Negligent Misrepresentations Claim Fails As A Matter Of Law.**

Sequoia's claim for negligent misrepresentations is also patently insufficient. The elements of a claim for negligent misrepresentation are: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (quoting *B.L.M. v. Saby & Deitch*, 55 Cal. App. 4th 823, 834 (1997)). Negligent misrepresentation claims sound in fraud, and thus it is "well-established in the Ninth

1   Circuit" that such claims must meet the particularity requirement of Fed. R. Civ. P.

2   9(b). *Id.* Under Fed. R. Civ. P. 9(b), at a minimum, negligent misrepresentation

3   claims must provide the "who, what, when, where, and how" of the supposed

4   wrongdoing. *Benas v. Shea Mortgage, Inc.*, 2012 WL 528244, at *4 (S.D. Cal. Feb.

5   16, 2012).

6       Sequoia fails to allege a single statement of present or past fact made by

7   LiveVox or a LiveVox employee, instead stating generically that LiveVox

8   purportedly "made representations of facts regarding the services it offered to

9   provide to Sequoia, with LiveVox providing recorded calling services in regard to

10  debt collection which is advertised as complying with all California and Federal

11  compliance requirements." Third-Party Compl. ¶ 17 (Exh. C). Besides failing to

12  identify the content, speaker, time, or place of any supposed statement by LiveVox,

13  Sequoia fails to identify any present or past fact contained in any such hypothetical

14  statement. A statement regarding a potential future event is not an actionable

15  negligent misrepresentation. *See Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.

16  App. 4th 153, 158 (1991) (statement of future action, even a promise to perform in

17  the future, legally insufficient to support negligent misrepresentation claim)

18      Sequoia also does not articulate any basis for its reasonable reliance on the

19  supposed statement by LiveVox that Sequoia's future use of the Application Service

20  would comply with the law. This omission is particularly telling because the MSA

21  plainly states that it is *Sequoia* – not LiveVox – that is responsible for ensuring that

22  its own activities comply with all applicable laws. MSA § 3.2 (Exh. B).

23      For these reasons, Sequoia's negligent misrepresentations claim is woefully

24  insufficient and should be dismissed.

25  **C.   Sequoia Fails To Allege That LiveVox Breached Any Term Of The**

26  **MSA.**

27      To state a legally-sufficient breach of contract claim, Sequoia must allege that

28  it performed its obligations under the MSA and that LiveVox breached the MSA,

8

1   causing damages.  *See Unical Enters. v. Am. Ins. Co.*, 2005 WL 6133910, at *3

2   (C.D. Cal. Sept. 12, 2005) (listing elements of breach of contract claim).  Here,

3   Sequoia asserts that the MSA requires LiveVox "to comply with all California and

4   Federal compliance requirements," but that LiveVox supposedly and "upon

5   information and belief" made "non compliant [*sic*] calls."  Third-Party Compl. ¶ 21

6   (Exh. C).  Such a conclusory allegation, without any factual support, does not state a

7   legally cognizable claim.  As noted above, moreover, Sequoia is responsible for

8   ensuring that its use of the Application Service offered by LiveVox complies "with

9   all applicable local, state, federal, and foreign laws."  MSA § 3.2 (Exh. B).

10  Accordingly, Sequoia's claim that LiveVox breached a duty not imposed by the

11  MSA fails as a matter of law.  *See Unical Enters.*, 2005 WL 6133910, at *3

12  (dismissing breach of contract claim where plaintiff failed to allege a breach of any

13  contractual term). [4]

14  ## CONCLUSION

15          For all the foregoing reasons, LiveVox respectfully submits that Sequoia's

16  claims must be dismissed in their entirety, with prejudice.

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  _____

26  [4] The Third-Party Complaint also alleges that the MSA contains "an attorneys fees clause [*sic*]"
    pursuant to which Sequoia claims a right to recover its fees.  Third-Party Compl. ¶ 24 (Exh. C).

27  But the MSA does not provide Sequoia with a right to recover its attorneys' fees (and, of course,
    such fees would not be recoverable here because Sequoia's claim is legally insufficient).

28

1

Dated:  August 8, 2012

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILLENKEN WILSON LOH &
DELGADO LLP


By:   /s/  Nhan T. Vu
      Nhan T. Vu

Attorneys for Third Party Defendant
LiveVox, Inc.

Of Counsel:

COHEN & GRESSER LLP

Nathaniel P.T. Read (*pro hac vice* pending)

---

10

MEMORANDUM OF POINTS AND AUTHORITIES

126479.1

## CERTIFICATE OF SERVICE

I hereby certify and declare under penalty of perjury that I am over the age of 18 and am not a party to this action. My business address is 707 Wilshire Boulevard, Suite 3850, Los Angeles, CA  90017.  A copy of the foregoing LIVEVOX, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD-PARTY COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF in Case No. 12-CV-0433 R (PLAx), was served on this date by electronically submitting a copy of the same on the District Court's website, CM/ECF system.

Dated:  August 8, 2012

By: /s/ Nhan T. Vu
      Nhan T. Vu

126479.1